UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BETTY LANGSTON,                    )
                                   )
            Plaintiff,             )
                                   )          3:08cv 57/RS/EMT
v.                                 )
                                   )          Case No. 2007 CA 005917
MERCK & CO., INC.,                 )
                                   )
            Defendant.             )

## DEFENDANT'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446 Defendant Merck
& Co., Inc. ("Merck") hereby gives notice that the above-captioned action, Case No. 2007-CA-
5917, pending in the Circuit Court in and for Okaloosa County, Florida, is hereby removed to the
United States District Court for the Northern District of Florida. In support of removal, Merck
respectfully states to the Court the following:

## THE FOSAMAX® MULTIDISTRICT LITIGATION

1.      This action involves allegations regarding the prescription medication
FOSAMAX®. On August 16, 2006, the Judicial Panel on Multidistrict Litigation ("MDL
Panel") issued an order transferring 18 FOSAMAX® products liability cases to the United States
District Court for the Southern District of New York (Keenan, J.) for coordinated pretrial
proceedings under 28 U.S.C. § 1407. *In re Fosamax Products Liability Litigation,* MDL No.
1789. Processes for quickly sending additional related cases to Judge Keenan have been set in
place. As of this date, the MDL Panel has issued 47 Conditional Transfer Orders requiring the
transfer of an additional 124 actions to MDL 1789, where a total of 377 cases are now pending,
including both the transferred cases and cases filed directly in the transferee court. Merck will

seek the transfer of this action to MDL-1789, and will in the next week provide the MDL Panel

notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

## GROUNDS FOR REMOVAL

2.      On or about December 17, 2007, Plaintiff commenced this action entitled

*Langston v. Merck & Co., Inc.*, Case No. 2007-CA-5917, against Merck in the Circuit Court in

and for Okaloosa County, Florida.

3.      For the reasons set forth in more detail below, this Court should assume

jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this matter is a civil action in

which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and

is between citizens of different states.

## I.      MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

4.      Plaintiff filed her Complaint in the Circuit Court in and for Okaloosa County,

Florida on or about December 17, 2007.  Merck was served with a copy of the Complaint on

February 5, 2008.  This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b),

within 30 days of service of the Complaint upon Merck.

5.      No further proceedings have been had in this action.

6.      Venue is proper in this Court because it is "the district and division embracing the

place where such action is pending." *See* 28 U.S.C. § 1441(a).  Therefore, this action is properly

removed to the Northern District of Florida pursuant to 28 U.S.C. § 89(a).

7.      All defendants join in this removal.

8.      No previous application has been made for the relief requested herein.

2

9.      Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders received by Merck, which include the Complaint and a Civil Cover Sheet, are attached hereto at Exhibit A.

10.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Circuit Court in and for Okaloosa County, Florida.

## II.   REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A.    The amount in controversy requirement is satisfied.

12.     It is apparent from the face of the Complaint that Plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest.

13.     Plaintiff alleges that, as a result of ingesting FOSAMAX®, she has "suffered severe personal injury to the jaw." (Complaint ¶ 39.) Plaintiff alleges that "[o]steonecrosis of the jaw is a serious medical event and can result in severe disability and death," and that it is "very difficult to treat and is not reversible." *Id.* ¶¶ 24, 26.

14.     Plaintiff claims to have "suffered severe mental and physical pain and suffering, and "sustained permanent injuries and emotional distress." *Id.* ¶ 40. Plaintiff also claims to have "incurred and will continue to incur medical and related expenses," to have "required and will continue to require healthcare and services," to have "suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of

3

premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages," including "loss of wages and wage-earning capacity." *Id.* ¶ 48.

15.    While there is not a record of prior cases that specifically involve osteonecrosis of the jaw – a fact which may be attributable to the fact that osteonecrosis of the jaw is a rare disorder and cases alleging liability against pharmaceutical manufacturers for allegedly causing the same had, prior to very recently, been non-existent – there are:

- numerous reported cases in which jaw or similar facial injury led to jury or court awards far in excess of $75,000. *See, e.g., Howie v. Walsh*, 609 S.E.2d 249 (N.C. App. 2005) (addressing jury award of $300,000 against dentist who fractured patient's jaw during procedure); *Becker v. Woods*, 806 N.Y.S.2d 704 (N.Y. App. Div. 2005) (affirming jury award of $840,000 in damages where dental patient suffered from permanent paresthesia); *Preston v. Dupont*, 35 P.3d 433 (Colo. 2001) (addressing jury award of more than $250,000 for damage to alveolar nerve in jaw); *Bowers v. Liuzza*, 769 So.2d 88 (La. App.), *writ. denied*, 776 So.2d 468 (La. 2000) (finding that minimum adequate damage award for nerve damage in jaw was an amount that exceeded $175,000); *Becker v. Halliday*, 554 N.W. 2d 67 (Mich. App. 1996) (jury award of $200,000 in damages, where syringe lodged in upper jaw); *Herpin v. Witherspoon*, 664 So.2d 515 (La. App. 1995) (plaintiff entitled to receive more than $75,000 as a result of temporomandibular joint (TMJ) dysfunction); *Washburn v. Holbrook*, 806 P.2d 702 (Or. App. 1991) (affirming jury finding of $400,000 in damages as a result of damage to jaw during root canal); and

- numerous prior cases that reveal that potential awards based on osteonecrosis or avascular necrosis of the hip, knee, or other joint, exceed the $75,000 jurisdictional

amount. *See, e.g., Barbee v. United States*, 2005 W.L. 3336504, at *1-2 (W.D. Wis. 2006) (finding that plaintiff suffered nearly $700,000 in damages for hip injuries that included avascular necrosis); *Shaver v. United States*, 319 F.Supp. 2d 649 (M.D.N.C. 2004) (awarding more than $75,000 in damages for osteonecrosis in knee caused by automobile accident); *Piselli v. 75th Street Medical*, 808 A.2d 508 (Md. 2002) (addressing jury award of $410,000 for medical malpractice that led to avascular necrosis of the hip); *Collier v. Cawthon*, 570 S.E.2d 53 (Ga. App. 2002) (affirming jury award of $170,000 for avascular necrosis of the hip).

16.    The Plaintiff's claims of "severe injury" as a result of osteonecrosis, and the compensatory damages that she seeks, far exceed this Court's minimum $75,000 jurisdictional limit.

**B.    There is complete diversity between the parties.**

17.    According to the Complaint, Plaintiff was at the time of the filing of the Complaint and is now a citizen of Florida.  (Complaint ¶ 3.)

18.    Merck is now, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).  (Complaint ¶ 4.)

19.    Hence, there is complete diversity between the plaintiff and defendant, and this court has subject matter jurisdiction under 28 U.S.C. § 1332.

20.    In addition, no defendant is a citizen of the state in which this action was brought. Under the clear language of 28 U.S.C. § 1441(b), this action is properly removed to this Court by Merck.

SQUIRE, SANDERS & DEMPSEY L.L.P.

WHEREFORE, Defendant Merck respectfully removes this action from the Circuit Court in and for Okaloosa County, Florida to this Court pursuant to 28 U.S.C. § 1441.

Dated: February 13, 2008

Respectfully submitted,

Patricia E. Lowry
PLowry@ssd.com
Florida Bar No. 332569
Barbara Bolton Litten
BLitten@ssd.com
Florida Bar No. 0091642
Squire, Sanders & Dempsey L.L.P.
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Tel.:   561.650.7200
Fax:   561.655.1509

Attorneys for Defendant Merck & Co., Inc.

## CERTIFICATE

I hereby certify that on this 13th day of February, 2008, a copy of the foregoing was served by first class mail, postage prepaid, on:

      Meghan M. Tans
      Timothy M. O'Brien
      Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
      316 South Baylen Street, Suite 600
      P.O. Box 12308
      Pensacola, FL 32591

      Attorneys for Plaintiff

                             Barbara Bolton Litten

WESTPALMBEACH/522771.1

7

# EXHIBIT "A"

IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY. FLORIDA

JANIE H. CLARY.

    Plaintiff,

vs.

MERCK & CO., INC.,

    Defendant.

Civil Action No.: _____

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, BETTY LANGSTON. by and through her undersigned attorneys Levin, Papantonio et al., sues Defendant Merck & Company, Inc., and alleges as follows:

### I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter as the injuries complained of occurred in Escambia County, Florida.  Plaintiff is a resident of the State of Florida, County of Escambia. Defendant is incorporated and has its its primary place of business in the State of New Jersey.  The amount in controversy exceeds the jurisdictional limits of this Court.

2.    Venue is proper within this Court as a substantial number of events, actions or omissions giving rise to the Plaintiff's claims occurred in Escambia County.  At all times relevant to this matter, Defendant Merck conducted substantial business in this County.

## II. PARTIES

3.    Plaintiff BETTY LANGSTON was born March 1, 1937.   At all relevant times Plaintiff was a resident of Fort Walton Beach, Florida, and used FOSAMAX from March 1999 until March 2007.

4.    Defendant is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey.   The Defendant's registered office is at 820 Bear Tavern Road, City of West Trenton, Mercer County, New Jersey.

5.    Defendant was at all relevant times authorized to conduct business in the State of Florida.

6.    Defendant has regularly transacted business in the State of Florida and continues to do so.

7.    At all relevant times Defendant, through its agents, servants, employees and apparent agents was the designer, manufacturer, marketer, distributor and seller of FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis.

8.    Defendant, either directly or through its agents, apparent agents, servants or employees, at all relevant times, sold and distributed FOSAMAX in the State of Florida for the treatment of osteoporosis and Paget's Disease.

9.    Defendant derives substantial revenue from pharmaceutical products used or consumed in the State of Florida.

-2-

10.    Defendant expected, or should have expected, that its business activities could or
would have consequences within the State of Florida.

### III. SUMMARY OF THE CASE

11.    Defendant, either directly or through its agents, apparent agents, servants or
employees designed, manufactured, marketed, advertised, distributed and sold
FOSAMAX for the treatment of osteoporosis, Paget's Disease, and other off-label
uses.

12.    As a result of the defective nature of FOSAMAX, persons who were prescribed and
ingested FOSAMAX, including Plaintiff BETTY LANGSTON, have suffered and
may continue to suffer severe and permanent personal injuries to the jaw bone,
including osteonecrosis of the jaw and other diagnoses of irreversible damage to the
jaw.

13.    Defendant concealed its knowledge of FOSAMAX's unreasonably dangerous risks
from Plaintiff BETTY LANGSTON, other consumers, and the medical community.

14.    Defendant failed to conduct adequate and sufficient post-marketing surveillance of
FOSAMAX after it began marketing, advertising, distributing, and selling the drug.

15.    As a result of Defendant's actions and inaction, Plaintiff BETTY LANGSTON was
injured due to her ingestion of FOSAMAX, which has caused and will continue to
cause Plaintiff various injuries and damages.    Plaintiff accordingly seeks
compensatory damages.

-3-

## IV. FACTUAL BACKGROUND

16.    At all relevant times Defendant was responsible for, or involved in, designing,
       manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

17.    In September 1995, the United States Food and Drug Administration ("FDA")
       approved Merck's compound alendronate, which is marketed by Merck as
       FOSAMAX, for various uses, including the treatment of osteoporosis and Paget's
       Disease.

18.    FOSAMAX falls within a class of drugs known as bisphosphonates.
       Bisphosphonates are used for treating bone conditions such as osteoporosis and
       Paget's disease.  Other drugs within this class such as Aredia and Zometa are also
       used as chemotherapy and as adjunct chemotherapy but are not indicated for use in
       non-cancerous conditions such as osteoporosis.

19.    There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-
       containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphophonates
       include the following: pamidronate (Aredia); ibandronate (Bondronat); and
       alendronate (FOSAMAX). The non-nitrogenous bisphosphonates include the
       following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate
       (Skelid). Alendronate, like the others, contains a nitrogen atom, whereas etridonate,
       clodronate, and tiludronate do not. The PDR for FOSAMAX confirms that the
       molecule contains a nitrogen atom.

20.   Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract. Merck knew or should have know that FOSAMAX, as a nitrogenous bisphosphonate. shared a similar adverse event profiles to the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

21.   Merck knew and or should have known that bisphosphonates. including FOSAMAX, inhibit endothelial cell function. Similarly, Merck knew or should have known that Bisphosponates also inhibit vascularization of the affected area and induce ischemic changes specific to patients mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

22.   Merck also knew or should have known that these factors combine to create a compromised vascular supply in the affected area. As a result, a minor injury or disease can turning into a non-healing wound. That in turn can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

23.   Dentists are now being advised by state dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient on FOSAMAX.

24.   Once the osteonecrosis begins and becomes symptomatic, it is very difficult to treat and is not reversible.

-5-

25.    Shortly after Defendant began selling FOSAMAX, reports of osteonecrosis of the jaw and other dental complications among users began surfacing, indicating that FOSAMAX shared the class effects of the other nitrogenous bisphosphonates. Despite this knowledge, Defendant failed to implement further study  risk of osteonecrosis of the jaw relative to FOSAMAX.  Rather than evaluating and verifying the safety of FOSAMAX with respect to osteonecrosis of the jaw, Defendant proposed further uses of FOSAMAX, such as FOSAMAX-D, and sought to extend the exclusivity period of FOSAMAX through 2018.

26.    Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

27.    Since FOSAMAX was released, the FDA has received a number of reports osteonecrosis of the jaw among users of FOSAMAX.

28.    On August 25, 2004, the United States Food & Drug Administration ("FDA") posted its ODS Postmarketing Safety Review on bisphosphonates - - specifically pamidronate (Aredia), zoledronic acid (Zometa), risedronate (Actonel), and alendronate (FOSAMAX). This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

29.    As a result of the FDA Review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The FDA's review indicated that the osteonecrosis of the jaw was a class effect which specifically extended to the oral bisphosphonate, FOSAMAX.

-6-

30.  As a result, the FDA recommended and stated that the labeling for FOSAMAX

should be amended by Merck to specifically warn about the risk of osteonecrosis of

the jaw. Merck has refused to accede to the FDA's request and, to this day, still does

not warn of the risk of osteonecrosis of the jaw in its FOSAMAX labeling.

31.  Rather than warn patients, and despite knowledge known by Defendant about

increased risk of osteonecrosis of the jaw on patients using FOSAMAX, Defendant

continues to defend FOSAMAX and minimize unfavorable findings.

32.  FOSAMAX is one of Defendant's top selling drugs. Averaging more than $3 billion

a year in sales.

33.  Consumers, including Plaintiff BETTY LANGSTON, who have used FOSAMAX

for treatment of osteoporosis, have several alternative safer products available to treat

the conditions.

34.  Defendant knew of the significant risk of dental and oral complications caused by

ingestion of FOSAMAX, but Defendant did not adequately and sufficiently warn

consumers, including Plaintiff BETTY LANGSTON, or the medical community, of

such risks.

35.  As a direct result, Plaintiff BETTY LANGSTON was prescribed FOSAMAX and

has been permanently and severely injured, having suffered serious consequences

from the ingestion of FOSAMAX. Plaintiff BETTY LANGSTON requires and will

in the future require ongoing medical care and treatment.

-7-

36.  Plaintiff BETTY LANGSTON has suffered from mental anguish from the knowledge that Plaintiff will have life-long complications as a result of the injuries Plaintiff sustained from the use of FOSAMAX.

37.  Plaintiff BETTY LANGSTON was prescribed and began taking FOSAMAX in March 1999.

38.  Plaintiff used FOSAMAX as prescribed and in a foreseeable manner.

39.  As a direct and proximate result of using FOSAMAX, Plaintiff suffered severe personal injury to the jaw.

40.  Plaintiff, as a direct and proximate result of using FOSAMAX, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

41.  Plaintiff used FOSAMAX which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

42.  Plaintiff would not have used FOSAMAX had Defendant properly disclosed the risks associated with the drug. Alternatively, Plaintiff would have known the precursor events of osteonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

43.  Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking FOSAMAX. The running of any applicable statute of limitations has been tolled by reason of Defendant's fraudulent concealment.

-8-

44.    As a result of Defendant's actions. Plaintiff and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

## COUNTS

### COUNT I: NEGLIGENCE

45.    Plaintiff re-alleges paragraphs 1-44 as if fully set forth herein.

46.    Defendant owed Plaintiff, BETTY LANGSTON, and other consumers, a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

47.    Defendant failed to exercise due care under the circumstances and therefore breached this duty by:

a. failing to properly and thoroughly test FOSAMAX before releasing the drug to market;

b. failing to properly and throughly analyze the data resulting from the pre-marketing tests of FOSAMAX;

c. failing to conduct sufficient post-market testing and surveillance of FOSAMAX;

d. designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX to consumers. including Plaintiff, without an adequate warning of the significant and dangerous risks of FOSAMAX and without proper instructions to avoid the harm which

-9-

could foreseeably occur as a result of using the drug;

      e. failing to exercise due care when advertising and promoting FOSAMAX; and

      f. negligently continuing to manufacture, market, advertise, and distribute FOSAMAX after Defendant knew or should have known of its adverse effects.

48.    As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff BETTY LANGSTON sustained significant and permanent injury of the jaw. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

49.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

## COUNT II: STRICT LIABILITY

50.    Plaintiff re-alleges paragraphs 1-49 as if fully set forth herein.

51.    Defendant manufactured, sold, distributed, marketed, and/or supplied FOSAMAX

-10-

in a defective and unreasonably dangerous condition to consumers. including Plaintiff BETTY LANGSTON.

52. Defendant designed, manufactured, sold, distributed, supplied, marketed, and/or promoted FOSAMAX, which was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

53. Plaintiff used FOSAMAX as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant.

54. FOSAMAX failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

55. FOSAMAX was defective in its design and was unreasonably dangerous in that its unforeseeable risks exceeded the benefits associated with its design or formulation.

56. FOSAMAX was defective in design or formulation in that it posed a greater likelihood of injury than other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

57. FOSAMAX was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with nor accompanied by warnings adequate to alert consumers, including Plaintiff, of the risks described herein, including, but not limited to, the risk of osteonecrosis of the jaw.

58. Although Defendant knew or should have known of the defective nature of

-11-

FOSAMAX, it continued to design, manufacture, market, and sell FOSAMAX so as to maximize sales and profits at the expense of the public health and safety. By so acting, Defendant acted with conscious and deliberate disregard of the foreseeable harm caused by FOSAMAX.

59.    Plaintiff could not, through the exercise of reasonable care, have discovered FOSAMAX's defects or perceived the dangers posed by the drug.

60.    As a direct and proximate consequence of Defendant's conduct, Plaintiff BETTY LANGSTON sustained significant and permanent injury of the jaw. In addition, Plaintiff required and will continue to require healthcare. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

61.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

-12-

## COUNT III:  BREACH OF EXPRESS WARRANTY

62.    Plaintiff re-alleges paragraphs 1-61 as if fully set forth herein.

63.    Defendant expressly represented to Plaintiff BETTY LANGSTON and other consumers and the medical community that FOSAMAX was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

64.    FOSAMAX does not conform to Defendant's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries.

65.    At all relevant times FOSAMAX did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

66.    Plaintiff BETTY LANGSTON, other consumers, and the medical community relied upon Defendant's express warranties.

67.    As a direct and proximate result of Defendant's actions, Plaintiff BETTY LANGSTON sustained serious significant and permanent injury of the jaw.  In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.  Plaintiff's direct medical losses and costs include care for

-13-

hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

68.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

## COUNT IV: BREACH OF IMPLIED WARRANTY

69.    Plaintiff re-alleges paragraphs 1-68 as if fully set forth herein.

70.    Defendant manufactured, distributed, advertised, promoted, and sold FOSAMAX.

71.    At all relevant times, Defendant knew of the use for which FOSAMAX was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

72.    Defendant was aware that consumers, including Plaintiff BETTY LANGSTON, would use FOSAMAX for treatment of osteoporosis and for other purposes.

73.    Plaintiff and the medical community reasonably relied upon the judgment and sensibility of Merck to sell FOSAMAX only if it was indeed of merchantable quality and safe and fit for its intended use.

74.    Defendant breached its implied warranty to consumers, including Plaintiff; FOSAMAX was not of merchantable quality or safe and fit for its intended use.

75.    Consumers, including Plaintiff, and the medical community, reasonably relied upon Defendant's implied warranty for FOSAMAX.

-14-

76.  FOSAMAX reached consumers without substantial change in the condition in which it was manufactured and sold by Defendant.

77.  As a direct and proximate result of Defendant's action, Plaintiff BETTY LANGSTON sustained significant and permanent injury of the jaw.  In addition, Plaintiff required and will continue to require healthcare and services.  Plaintiff has incurred and will continue to incur medical and related expenses.  Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.  Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies.  Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

78.  Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

## COUNT V: FRAUDULENT MISREPRESENTATION

79.  Plaintiff re-alleges paragraphs 1-78 as if fully set forth herein.

80.  Defendant made fraudulent misrepresentations with respect to FOSAMAX in the following particulars:

a. Defendant represented through its labeling, advertising, marketing materials, detail

-15-

persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX had been tested and found to be safe and effective for the treatment of pain and inflammation; and

b. Defendant represented that FOSAMAX was safer than other alternative medications.

81. Defendant knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of FOSAMAX to consumers, including Plaintiff, and the medical community.

82. The representations were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

83. Defendant's representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of FOSAMAX.

84. Plaintiff BETTY LANGSTON, Plaintiff's doctors, and others relied upon the representations.

85. Defendant's fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

86. As a direct and proximate result, Plaintiff BETTY LANGSTON sustained significant and permanent injury of the jaw. In addition, Plaintiff required and will continue to

require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

87.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

### COUNT VI: FRAUDULENT CONCEALMENT

88.    Plaintiff re-alleges paragraphs 1-87 as if fully set forth herein.

89.    Defendant fraudulently concealed information with respect to FOSAMAX in the following particulars:

a. Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX was safe and fraudulently withheld and concealed information about the substantial risks of using FOSAMAX; and

b.    Defendant represented that FOSAMAX was safer than other alternative medications and fraudulently concealed information which demonstrated that FOSAMAX

-17-

was not safer than alternatives available on the market.

90. Defendant had sole access to material facts concerning the dangers and unreasonable risks of FOSAMAX.

91. The concealment of information by Defendant about the risks of FOSAMAX was intentional, and the representations made by Defendant were known by Defendant to be false.

92. The concealment of information and the misrepresentations about FOSAMAX were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

93. Plaintiff BETTY LANGSTON, Plaintiff's doctors, and others relied upon the representations and were unaware of the substantial dental and oral risks of FOSAMAX which Defendant concealed from Plaintiff's doctors and Plaintiff.

94. As a direct and proximate result of Defendant's fraudulent concealment and misrepresentation, Plaintiff BETTY LANGSTON suffered significant and permanent injury of the jaw and was caused to suffer severe and permanent injuries, including pain and mental and physical anguish and suffering, including a diminished capacity for the enjoyment of life, aggravation of preexisting conditions and activation of latent conditions, and a fear of developing other harmful conditions or problems as a result of the injury. Plaintiff has suffered and will continue to suffer a loss of wages and wage-earning capacity and has incurred expense for medical care and treatment due to the injuries caused by FOSAMAX.

95.    Defendant's conduct as described above was committed with knowing, conscious,
wanton, willful, and deliberate disregard for the value of human life and the rights
and safety of consumers such as Plaintiff.

### GLOBAL PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant, as follows:

    a. compensatory damages on each cause of action;

    b. reasonable attorneys' fees where recoverable;

    c. costs of this action; and

    d. such other additional and further relief as the Court may deem necessary,
appropriate, and just.

### VI. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

MEGHAN M. TANS, FL BAR NO.: 888745
TIMOTHY M. O'BRIEN, FL BAR NO: 55565
Levin, Papantonio, Thomas, Mitchell, Echsner &
Proctor, P.A.
316 South Baylen Street, Suite 600 (32502)
P. O. Box 12308
Pensacola, FL 32591
(850) 435-7084 FAX (850) 435-6084
Attorney for Plaintiff

Form 1.997

Civil Cover Sheet

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of reporting judicial workload data: pursuant to Florida Statute 25.075. (See instructions on the reverse of the form.)

I. CASE STYLE                OKALOOSA COUNTY CIRCUIT COURT

BETTY LANGSTON.

    Plaintiff,

vs.                          Case No.: 07 - CA - 5917 - S
                             Division: AB

MERCK & CO., INC.,

    Defendant.

II. TYPE OF CASE        (Place an x in one box only. If the case fits more than one type of case, Select the most definitives.)

| Domestic Relations | Torts | Other Civil |
|---|---|---|
| ☐ Simplified dissolution | ☐ Professional Malpractice | ☐ Contracts |
| ☐ Dissolution | X Products liability | ☐ Condominium |
| ☐ Support - IV-O | ☐ Auto negligence | ☐ Real property/ |
| ☐ Uresa - IV-O | ☐ Other negligence |    Mortgage foreclosure |
| ☐ Uresa - Non IV-O | | ☐ Eminent domain |
| ☐ Domestic violence | | ☐ Other |
| ☐ Other domestic relations | | |

III. Is Jury Trial Demanded In Complaint?

☒ Yes

☐ No

Date: 12/14/07

SIGNATURE OF ATTORNEY FOR PARTY

Meghan M. Tans, Esquire
Florida Bar #0888745
Timothy M. O'Brien, Esquire
Florida Bar #055565
Levin. Papantonio. Thomas, Mitchell, Echsner
  & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
(850) 435-7000
Attorneys for Plaintiff

## IN THE CIRCUIT COURT IN AND FOR OKALOOSA COUNTY, FLORIDA

**BETTY LANGSTON**
          **Plaintiff(s)**

**vs.**

                                        **Case No.  2007 CA 005917 S**

**MERCK & CO INC**
          **Defendant(s)**

_____/

### MEDIATION & SCHEDULING ORDER

          THIS COURT having been notified of the filing of the above action, hereby orders as follows:

          1.  This cause shall be considered ripe for mediation 150 days after the filing of the initial complaint unless completely resolved during that time period.
          2.  Within said 150 days, all parties shall conduct discovery sufficient to be prepared for mediation in good faith.
          3.  At 150 days from the date of filing of the initial complaint, Plaintiff shall initiate the scheduling of mediation.  If the parties are unable to agree upon a mediator, upon notice to the court a mediator will be court appointed.
          4.  Mediation is required to be held within 90 days of expiration of the 150 days from date of filing.
          If unable to mediate within the time period herein ordered, counsel shall be required to obtain leave of court and/or provide a stipulated order extending time for mediation.
          5.  Counsel is cautioned that failure to comply with the terms of this Order may result in sanctions being imposed for non-compliance.

          DONE AND ORDERED at Shalimar this December 17, 2007.

                                        /S/  G ROBERT BARRON
                                        Circuit Judge

Copies furnished this December 17, 2007 to:

Plaintiff/Plaintiff's Counsel

                    DON W. HOWARD
                    CLERK OF CIRCUIT COURT

          By:

                    K. Sims, Deputy Clerk

# IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT,
# IN AND FOR OKALOOSA COUNTY, FLORIDA

BETTY LANGSTON
       Plaintiff(s),

Case No. 2007 CA 005917 S

vs

Division: G ROBERT BARRON

MERCK & CO INC
       Defendant(s).

## ALIAS SUMMONS

GREETINGS:

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in the above styled cause upon the defendant:

      **MERCK & CO., Inc.**
      **c/o C.T. Corporation System – Registered Agent**
      **1200 South Pine Island Road**
      **Plantation, FL 3 3324**

Each defendant is hereby required to serve written defenses to said complaint or petition on plaintiff's attorney, whose name and address is:

      TIMOTHY OBRIEN
      LEVIN PAPANTONIO THOMAS MITCHELL ECHSNER
      316 S BAYLEN ST STE 600
      PENSACOLA, FL  32501

Within 20 days after service of this summons upon the defendant, exclusive of the day of service, and to file the original of said written defenses with the clerk of said court either before service on plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on January 25, 2008.

      DON W. HOWARD
      CLERK OF CIRCUIT COURT

By:

      K. Sims, Deputy Clerk

# CIVIL COVER SHEET

3:08cv51/RS/EMT

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| | |
|---|---|
| **1. (a) PLAINTIFF**<br>BETTY LANGSTON. | **DEFENDANTS** MERCK & COMPANY, INC. |
| **(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF:**<br>OKALOOSA<br><br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND<br>INVOLVED. |
| **(c)** ATTORNEY'S (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>See Attachment | ATTORNEYS (IF KNOWN)<br>See Attachment |

## II. BASIS OF JURISDICTION    (PLACE AN "X" IN ONE BOX ONLY)

□1 U.S. Government
     Plaintiff

□ 3 Federal Question
     (U.S. Government Not a Party)

□ 2 U.S. Government
     Defendant

**X** 4 Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                         and One Box for Defendant)

| | PTF DEF | | PTF DEF |
|---|---|---|---|
| Citizen of This State | **X** 1  □ 1 | Incorporated or Principal Place<br>of Business in This State | □ 4   □ 4 |
| Citizen of Another State | □ 2   □ 2 | Incorporated *and* Principal Place<br>of Business in Another State | □ 5   **X** 5 |
| Citizen or Subject of a<br>Foreign Country | □ 3   □ 3 | Foreign Nation | □ 6   □ 6 |

## IV. NATURE OF SUIT    (PLACE AN "X" IN ONE BOX ONLY)

| A    CONTRACT | A    TORTS | | B  FORFEITURE/PENALTY | A    BANKRUPTCY | A    OTHER STATUTES |
|---|---|---|---|---|---|
| □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment<br>     & Enforcement of Judgment<br>□ 151 Medicare Act<br>□ 152 Recovery of Defaulted<br>     Student Loan<br>     (Excl. Veterans)<br>□ 153 Recovery of Overpayment<br>     of Veteran's Benefits<br>□ 160 Stockholders Suits<br>□ 190 Other Contract<br>□ 195 Contract Product Liability<br>□ Franchise | **PERSONAL INJURY**<br>□ 310 Airplane<br>□ 315 Airplane Product<br>     Liability<br>□ 320 Assault Libel &<br>     Slander<br>□ 330 Federal Employers<br>     Liability<br>□ 340 Marine<br>□ 345 Marine Product<br>     Liability<br>□ 350 Motor Vehicle<br>□ 355 Motor Vehicle<br>     Product Liability<br>□ 360 Other Personal Injury | **PERSONAL INJURY**<br>□ 362  Personal Injury -<br>     Med. Malpractice<br>**X** 365 Personal Injury -<br>     Product Liability<br>□ 368  Asbestos Personal<br>     Injury Product<br>     Liability<br>**PERSONAL PROPERTY**<br>□ 370  Other Fraud<br>□ 371  Truth in Lending<br>□ 380  Other Personal<br>     Property Damage<br>□ 385  Property Damage<br>     Product Liability | □ 610 Agriculture<br>□ 620 Other Food & Drug<br>□ 625 Drug Related Seizure<br>     of Property 21 USC 881<br>□ 630 Liquor Laws<br>□ 640 R.R. & Truck<br>□ 650 Airline Regs.<br>□ 660 Occupational<br>     Safety/Health<br>□ 690 Other | □ 422 Appeal 28 USC 158<br>□ 423 Withdrawal<br>     28 USC 157<br><br>A    PROPERTY RIGHTS<br>□ 820 Copyrights<br>□ 830 Patent<br>□ 840 Trademark<br><br>B    SOCIAL SECURITY<br>□ 861 HIA (1395ff)<br>□ 862 Black Lung (923)<br>□ 863 DIWC-DIWW (405(g))<br>□ 864 SSID Title XVI<br>□ 865 IRS (405(g)) | □ 400 State Reapportionment<br>□ 410 Antitrust<br>□ 430 Banks and Banking<br>□ 450 Commerce/ICC Rates/etc.<br>□ 460 Deportation<br>□ 470 Racketeer Influenced<br>     and Corrupt Organizations<br>□ 480 Consumer Credit<br>□ 490 Cable/Sat TV<br>□ 810 Selective Service<br>□ 850 Securities/Commodities/<br>     Exchange<br>□ 875 Customer Challenge<br>     12 USC 3410<br>□ 890 Other Statutory Actions<br>□ 891 Agricultural Acts<br>□ 892 Economic Stabilization Act<br>□ 893 Environmental Matters<br>□ 894 Energy Allocation Act<br>□ 895 Freedom of Information<br>     Act |
| A    REAL PROPERTY | A    CIVIL RIGHTS | B    PRISONER<br>PETITIONS | A    LABOR<br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt Relations<br>□ 730 Labor/Mgmt Reporting<br>     & Disclosure Act<br>□ 740 Railway Labor Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc.<br>     Security Act | A    FEDERAL TAX SUITS<br>□ 870 Taxes (U.S. Plaintiff<br>     or Defendant)<br>□ 871 RSI - Third Party<br>     26 USC 7609 | □ 900 Appeal of Fee Determination<br>     Under Equal Access to<br>     Justice<br>□ 950 Constitutionality of State<br>     Statutes |
| □ 210 Landlord Condemnation<br>□ 220 Foreclosure<br>□ 230 Rent Lease & Ejectment<br>□ 240 Torts to Land<br>□ 245 Tort Product Liability<br>□ 290 All Other Real Property | □ 441 Voting<br>□ 442 Employment<br>□ 443 Housing/<br>     Accommodations<br>□ 444 Welfare<br>□ 445 Amer.<br>     w/Disabilities<br>     - Employment<br>□ 446 Amer.<br>     w/Disabilities -<br>     Other<br>□ 440 Other Civil<br>     Rights | □ 510 Motions to Vacate<br>     Sentence<br>**HABEAS CORPUS:**<br>□ 530 General<br>□ 535 Death Penalty<br>□ 540 Mandamus & Other<br>□ 550 Civil Rights<br>□ 555 Prison Condition | | | |

## V. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

□ 1 Original
     Proceeding

**X** 2 Removed from
     State Court

□ 3 Remanded from
     Appellate Court

□ 4 Reinstated or
     Reopened

□ 5  Transferred from
     another district
     (specify)

□ 6 Multidistrict
     Litigation

□ 7 Appeal to District Judge from
     Magistrate Judge

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332, 1441, and 1446

Brief description of cause: Plaintiff's Complaint asserts personal injury claims under theories of Negligence, Strict Liability, Breach of Express Warranty, Breach of Implied Warranty, Fraudulent Misrepresentation and Fraudulent Concealment, allegedly as a result of ingesting Fosamax®, a drug marketed by Merck.

## VII. REQUESTED IN    □ CHECK IF THIS IS A CLASS ACTION    DEMAND $75,000 +
## COMPLAINT:    UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: **X** Yes   □ No

## VIII. RELATED CASE(S)    (See instructions):
## IF ANY

DATE 2/13/07      SIGNATURE OF ATTORNEY OF RECORD:                     91642

Barbara Bolton Litten, FBN 91642, Squire, Sanders & Dempsey, 1900 Phillips Point West,
777 S. Flagler Drive, West Palm Beach, FL 33401-6198 (561) 650-7121

FOR OFFICE USE ONLY
RECEIPT # F1N3-1631    AMOUNT $350.00    APPLYING IFP ____    JUDGE RS    MAG. JUDGE EMT

## BETTY LANGSTON

vs.

## MERCK & COMPANY, INC.

1.    (c)    **Attorneys for Plaintiff**

Meghan M. Tans
Florida Bar No. 888745
Timothy M. O'Brien
Florida Bar No. 55565
Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
316 South Baylen Street, Suite 600
P.O. Box 12308
Pensacola, FL 32591
Telephone:    850.435.7084
Facsimile:    850.435.6084
E-mail:  mtans@levinlaw.com
E-mail:  tobrian@levinlaw.com

**Attorneys for Defendant Merck & Co., Inc.**

Patricia E. Lowry
Florida Bar No. 332569
Barbara Bolton Litten
Florida Bar No. 91642
SQUIRE, SANDERS & DEMPSEY, L.L.P.
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:    561.650.7200
Facsimile:    561.655.1509
E-mail:  plowry@ssd.com
E-mail:  blitten@ssd.com

WESTPALMBEACH/522757.1

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BETTY LANGSTON[1],                          )
                                            )
            Plaintiff,                      )
                                            )
v.                                          )    Case No. 2007 CA 005917
                                            )
MERCK & CO., INC.,                          )
                                            )
            Defendant.                      )
                                            )

## ANSWER AND AFFIRMATIVE DEFENSES OF MERCK & CO., INC. AND DEMAND FOR JURY TRIAL

Defendant, Merck & Co., Inc. ("Merck"), by and through its undersigned

attorneys, hereby answers the Complaint. Merck denies all allegations set forth in the

Complaint except to the extent such allegations are specifically admitted below:

## I. JURISDICTION AND VENUE

1.      The allegations of the first sentence of Paragraph 1 are conclusions of law

to which no response is required. To the extent that a response is required, Merck denies

each and every allegation of the first sentence of Paragraph 1. As to the allegations of the

second sentence of Paragraph 1, Merck is without knowledge or information sufficient to

form a belief as to these allegations. As to the allegations of the third sentence of

Paragraph 1, Merck admits that it is a corporation organized under the laws of the State

of New Jersey with its principal place of business in New Jersey. Merck is without

knowledge as to the allegations in the fourth sentence of Paragraph 1, but for

jurisdictional purposes only, admits that the Plaintiff seeks in excess of $75,000.

---

[1]    The caption of the Complaint improperly identifies plaintiff as Janie H. Clary and the court as the Circuit Court In and For Escambia County, Florida. The proper case name is *Betty Langston v. Merck & Co, Inc.*, filed in the Circuit Court of the First Judicial Circuit, In and For Okaloosa County, Florida as reflected on the state court clerk's docket for case no. 2007 CA 005917 S.

2.       The allegations of the first sentence of Paragraph 2 are conclusions of law to which no response is required.  To the extent a response is required, Merck denies the allegations of said sentence.  As to the allegations of the second sentence of Paragraph 2, Merck is without knowledge as to what is meant by the phrase "substantial business," so the allegations of said sentence are denied.

## II. <u>PARTIES</u>

3.       Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 3.

4.       Merck admits that it is a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey.  Except as expressly admitted herein, Merck denies the remaining allegations of Paragraph 4.

5.       Merck admits that it is registered to do business in the State of Florida.

6.       Merck is without knowledge as to what is meant by the phrase "regularly transacted," so the allegations in Paragraph 6 are denied.

7.       Merck denies each and every allegation of Paragraph 7, except that it admits that Merck manufactured, marketed, and distributed the prescription medicine FOSAMAX® in accordance with its approved prescribing information.  Merck denies any allegations in Paragraph 7 inconsistent with that prescribing information and respectfully refers the Court to the Physician's Desk Reference ("PDR") for FOSAMAX® for its actual language and full text.

8.       Merck admits only that it distributed FOSAMAX® for prescription in accordance with its approved prescribing information and denies any allegations in Paragraph 8 inconsistent with that prescribing information.  Merck respectfully refers the

Court to the PDR for FOSAMAX® for its actual language and full text. Except as expressly admitted herein, Merck denies the remaining allegations of Paragraph 8.

9.     Merck is without knowledge as to what is meant by the phrase "substantial revenue," so the allegations in Paragraph 9 are denied.

10.     Merck is without knowledge as to what is meant by "consequences," so the allegations in Paragraph 10 are denied.

### III.  SUMMARY OF THE CASE

11.     Merck denies each and every allegation of Paragraph 11, except that it admits that Merck manufactured, marketed, and distributed the prescription medicine FOSAMAX® for prescription in accordance with its approved prescribing information.

12.     Merck denies each and every allegation of Paragraph 12.

13.     Merck denies each and every allegation of Paragraph 13.

14.     Merck denies each and every allegation of Paragraph 14.

15.     Merck denies each and every allegation of Paragraph 15.

### IV.  FACTUAL BACKGROUND

16.     Merck denies each and every allegation of Paragraph 16, except that it admits that Merck manufactured, marketed, and distributed the prescription medicine FOSAMAX® for prescription in accordance with its approved prescribing information.

17.     Merck denies each and every allegation of Paragraph 17, except that Merck admits that it sought and, in 1995, first obtained FDA approval to manufacture and market FOSAMAX® 10 mg and FOSAMAX® 40 mg tablets, a prescription medication approved by the FDA for prescription in accordance with its approved prescribing

information.  Merck denies any allegations in Paragraph 17 inconsistent with that prescribing information.

18.    Merck admits only that FOSAMAX® is a prescription medication approved by the FDA for prescription in accordance with its approved prescribing information and denies any allegations in Paragraph 18 inconsistent with that prescribing information.  Merck also refers the Court to the prescribing information for Aredia and Zometa, and denies any allegations in Paragraph 18 with respect to Aredia and Zometa inconsistent with that prescribing information.

19.    Merck admits only that some bisphosphonates contain nitrogen and some do not and that FOSAMAX® is a prescription medication approved by the FDA for prescription in accordance with its approved prescribing information.  Merck denies any allegations in Paragraph 19 inconsistent with that prescribing information.  Merck respectfully refers the Court to the PDR for FOSAMAX® for its actual language and full text.  Merck also refers the Court to the prescribing information for Aredia, Bondronat, Didronel, Bonefos, Loron, and Skelid, and denies any allegations in Paragraph 19 with respect to Aredia, Bondronat, Didronel, Bonefos, Loron, and Skelid inconsistent with that prescribing information.  Merck denies the remaining allegations of Paragraph 19.

20.    Merck denies each and every allegation of Paragraph 20.

21.    Merck denies each and every allegation of Paragraph 21.

22.    Merck denies each and every allegation of Paragraph 22.

23.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 23.

24.    Merck denies each and every allegation of Paragraph 24.

SQUIRE, SANDERS & DEMPSEY L.L.P.

25.    Merck denies each and every allegation of Paragraph 25.

26.    Merck denies each and every allegation of Paragraph 26.

27.    Merck denies each and every allegation of Paragraph 27.

28.    Merck denies each and every allegation of Paragraph 28, except that

Merck admits that the FDA drafted an "ODS Postmarketing Safety Review," but

respectfully refers the Court to said document for its actual language and full text.

29.    Merck denies each and every allegation of Paragraph 29.

30.    Merck denies each and every allegation of Paragraph 30.

31.    Merck denies each and every allegation of Paragraph 31.

32.    Merck denies each and every allegation of Paragraph 32, except that

Merck admits that Fosamax product sales in 2006 amounted to approximately $3.13

billion.

33.    Merck is without knowledge as to whether Plaintiff used FOSAMAX®.

Merck denies the remaining allegations in Paragraph 33.

34.    Merck denies each and every allegation of Paragraph 34.

35.    Merck is without knowledge as to whether Plaintiff was prescribed

FOSAMAX®.  Merck denies the remaining allegations in Paragraph 35.

36.    Merck denies each and every allegation of Paragraph 36.

37.    Merck lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations of Paragraph 37.

38.    Merck lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations of Paragraph 38.

39.    Merck denies each and every allegation of Paragraph 39.

40.     Merck denies each and every allegation of Paragraph 40.

41.     Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 41.

42.     Merck denies each and every allegation of Paragraph 42.

43.     Merck denies each and every allegation of Paragraph 43.

44.     Merck denies each and every allegation of Paragraph 44.

## COUNTS

### COUNT I:  NEGLIGENCE

45.     Merck repleads its answers to Paragraphs 1 through and including 44, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

46.     The allegations in Paragraph 46 are conclusions of law to which no response is required; to the extent that a response is deemed necessary, the allegations are denied and Merck respectfully refers the Court to the relevant legal standard, including any conflict of law rules.

47.     Merck denies each and every allegation of Paragraph 47, including each and every allegation contained in subparts (a) through (f).

48.     Merck denies each and every allegation of Paragraph 48.

49.     Merck denies each and every allegation of Paragraph 49.

### COUNT II:  STRICT LIABILITY

50.     Merck repleads its answers to Paragraphs 1 through and including 49, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

SQUIRE, SANDERS & DEMPSEY L.L.P.

51.    Merck denies each and every allegation of Paragraph 51, except that it admits that Merck manufactured, marketed and distributed the prescription medicine FOSAMAX® for prescription in accordance with its approved prescribing information.

52.    Merck denies each and every allegation of Paragraph 52, except that it admits that Merck manufactured, marketed and distributed the prescription medicine FOSAMAX® for prescription in accordance with its approved prescribing information and states that it is without knowledge as to the condition of the FOSAMAX® Plaintiff alleges he consumed.

53.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 53.

54.    Merck denies each and every allegation of Paragraph 54.

55.    Merck denies each and every allegation of Paragraph 55.

56.    Merck denies each and every allegation of Paragraph 56.

57.    Merck denies each and every allegation of Paragraph 57.

58.    Merck denies each and every allegation of Paragraph 58.

59.    Merck denies each and every allegation of Paragraph 59.

60.    Merck denies each and every allegation of Paragraph 60.

61.    Merck denies each and every allegation of Paragraph 61.

<u>COUNT III:  BREACH OF EXPRESS WARRANTY</u>

62.    Merck repleads its answers to Paragraphs 1 through and including 61, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

63.    Merck denies each and every allegation of Paragraph 63, and respectfully refers the Court to the FDA-approved prescribing information for any and all representations contained therein. Merck further avers that FOSAMAX® is a prescription medication approved by the FDA for prescription in accordance with its approved prescribing information.

64.    Merck denies each and every allegation of Paragraph 64.

65.    Merck denies each and every allegation of Paragraph 65.

66.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 66.

67.    Merck denies each and every allegation of Paragraph 67.

68.    Merck denies each and every allegation of Paragraph 68.

## COUNT IV:  BREACH OF IMPLIED WARRANTY

69.    Merck repleads its answers to Paragraphs 1 through and including 68, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

70.    Merck denies each and every allegation of Paragraph 70, except that Merck admits that it manufactured, marketed, and distributed the prescription medicine FOSAMAX® for prescription in accordance with its approved prescribing information.

71.    Merck denies each and every allegation of Paragraph 71, and respectfully refers the Court to the FDA-approved prescribing information for any and all representations contained therein. Merck further avers that FOSAMAX® is a prescription medication approved by the FDA for prescription in accordance with its approved prescribing information.

72.    Merck denies each and every allegation of Paragraph 72.

73.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 73.

74.    Merck denies each and every allegation of Paragraph 74.

75.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 75.

76.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 76.

77.    Merck denies each and every allegation of Paragraph 77.

78.    Merck denies each and every allegation of Paragraph 78.

<u>COUNT V:  FRAUDULENT MISREPRESENTATION</u>

79.    Merck repleads its answers to Paragraphs 1 through and including 78, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

80.    Merck denies each and every allegation of Paragraph 80, including each and every allegation contained in subparts (a) through (b).

81.    Merck denies each and every allegation of Paragraph 81.

82.    Merck denies each and every allegation of Paragraph 82.

83.    Merck denies each and every allegation of Paragraph 83.

84.    Merck denies each and every allegation of Paragraph 84.

85.    Merck denies each and every allegation of Paragraph 85.

86.    Merck denies each and every allegation of Paragraph 86.

87.    Merck denies each and every allegation of Paragraph 87.

SQUIRE, SANDERS & DEMPSEY L.L.P.

## COUNT VI:  FRAUDULENT CONCEALMENT

88.     Merck repleads its answers to Paragraphs 1 through and including 87, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

89.     Merck denies each and every allegation of Paragraph 89, including each and every allegation contained in subparts (a) through (b).

90.     Merck denies each and every allegation of Paragraph 90.

91.     Merck denies each and every allegation of Paragraph 91.

92.     Merck denies each and every allegation of Paragraph 92.

93.     Merck denies each and every allegation of Paragraph 93.

94.     Merck denies each and every allegation of Paragraph 94.

95.     Merck denies each and every allegation of Paragraph 95.

## GLOBAL PRAYER FOR RELIEF

Merck denies that Plaintiff is entitled to any of the relief requested in her Global Prayer for Relief.

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff's Complaint with prejudice and awarding Merck such other and further relief that the Court may deem just and proper.

## **AFFIRMATIVE DEFENSES**

Discovery and investigation may reveal that any one or more of the following affirmative defenses should be available to Merck in this matter.  Merck, therefore, asserts said affirmative defenses in order to preserve the right to assert them.  Upon completion of discovery, and if the facts warrant, Merck may withdraw any of these

SQUIRE, SANDERS & DEMPSEY L.L.P.

affirmative defenses as may be appropriate.  Further, Merck reserves the right to amend its Answer to assert additional defenses, cross-claims, counterclaims, and other claims and defenses as discovery proceeds.  Merck demands strict proof of all claims and allegations contained in Plaintiff's Complaint that Merck has not expressly admitted. Further answering and by way of additional defense, Merck states as follows:

## FIRST AFFIRMATIVE DEFENSE

Each and every claim asserted or raised in the Complaint is barred by the applicable statute of limitations and is otherwise untimely.

## SECOND AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

Each and every claim asserted or raised in the Complaint is barred by the doctrines of estoppel, waiver or statutory and regulatory compliance.

## FOURTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries or losses were caused in whole or in part through the operation of nature or other intervening cause or causes.

## FIFTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff asserts claims based on Merck's adherence to and compliance with applicable state laws, regulations and rules, such claims are preempted by federal law under the Supremacy Clause of the United States Constitution.

SQUIRE, SANDERS & DEMPSEY L.L.P.

## SIXTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff asserts claims based upon an alleged failure by Merck to warn Plaintiff directly of alleged dangers associated with the use of FOSAMAX®, such claims are barred under the learned intermediary doctrine because Merck has discharged its duty to warn in its warnings to the prescribing physician.

## SEVENTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, such injuries or losses were caused in whole or in part by the contributory negligence of the allegedly injured Plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE

Any liability that might otherwise be imposed upon this Defendant is subject to reduction by the application of the doctrine of comparative fault and/or negligence.

## NINTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, such injuries or losses were only sustained after Plaintiff knowingly, voluntarily, and willfully assumed the risk of any injury as the result of the consumption of, administration of, or exposure to any medicine or pharmaceutical preparation manufactured or distributed by Merck or other manufacturer.

## TENTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were caused by the actions of persons not having real or apparent authority to take said actions on behalf of Merck and over whom Merck had no control and for whom Merck may not be held accountable.

SQUIRE, SANDERS & DEMPSEY L.L.P.

## ELEVENTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were proximately caused by Plaintiff's misuse or abuse of FOSAMAX®.

## TWELFTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, such injuries or losses resulted from Plaintiff's pre-existing and/or unrelated medical, genetic and/or environmental conditions, diseases, or illnesses, idiosyncratic reactions, subsequent medical conditions or natural courses of conditions for which this Defendant is not responsible.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff relies upon any theory of breach of warranty, such claims are also barred for lack of timely notice of breach and/or lack of privity.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part under the applicable state law because FOSAMAX® was subject to and received pre-market approval by the FDA under 52 Stat. 1040, 21 U.S.C. § 301.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because the product at issue was made in accordance with the state of the art at the time it was manufactured.

SQUIRE, SANDERS & DEMPSEY L.L.P.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks punitive damages for the conduct which allegedly caused the injuries asserted in the Complaint, such an award would, if granted, violate Merck's state and federal constitutional rights.

## SEVENTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks punitive damages for an alleged act or omission of Merck, no act or omission was malicious, willful, wanton, reckless or grossly negligent and, therefore, any award of punitive damages is barred.

## EIGHTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks punitive damages, such claim is barred because FOSAMAX® and its labeling was subject to and received pre-market approval by the FDA under 52 Stat. 1040, 21 U.S.C. § 301.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part under comment k to Section 402A of the Restatement (Second) of Torts.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Merck provided legally adequate "directions or warnings" as to the use of FOSAMAX® and any other medicine or pharmaceutical preparation Plaintiff alleges to have taken within the meaning of comment j to Section 402A of the Restatement (Second) of Torts.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under Section 4, *et seq.*, of the Restatement (Third) of Torts: Products Liability.

SQUIRE, SANDERS & DEMPSEY L.L.P.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under comment f to Section 6 of the Restatement (Third) of Torts:  Products Liability.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

There is no practical or technically feasible alternative design that would have reduced the alleged risk without substantially impairing the reasonably anticipated and intended function of FOSAMAX®.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by failure to mitigate damages.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Merck's conduct conforms with medical knowledge.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

With respect to each and every cause of action, Plaintiff is not entitled to recovery for strict liability because Plaintiff cannot state claims founded in strict liability because, among other things, comments j and k to Section 402A of the Restatement (Second) of Torts relegates Plaintiff's claims to a negligence cause of action.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

All activities of Merck as alleged in the Complaint were expressly authorized and/or regulated by a government agency.  Therefore, Plaintiff's claims pertaining to unfair or deceptive practices are barred.

SQUIRE, SANDERS & DEMPSEY L.L.P.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

With respect to each and every cause of action, Plaintiff is not entitled to recover because if the product involved was unsafe, which Merck denies, then it was unavoidably unsafe as defined in Restatement of Torts. The apparent benefits of the product exceeded any apparent risk given the scientific knowledge available when the product was marketed.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Merck's advertisements and labeling with respect to the products which are the subject matter of this action were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States and Florida Constitutions.

## THIRTIETH AFFIRMATIVE DEFENSE

The public interest in the benefit and availability of the product which is the subject matter of this action precludes liability for risks, if any, resulting from any activities undertaken by Defendant, which were unavoidable given the state of human knowledge at the time those activities were undertaken. With respect to Plaintiff's claims, if it is determined there is a risk inherent in the product which is the subject matter of this action, then such risk, if any, is outweighed by the benefit of the product.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

At all times relevant herein, any product which is the subject matter of this action manufactured and distributed by Merck in any state in the United States was manufactured and distributed in a reasonable and prudent manner based upon available

medical and scientific knowledge and further was processed and distributed in accordance with and pursuant to all applicable regulations of the FDA.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

With respect to each and every purported cause of action, the acts of Merck were at all times done in good faith and without malice.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

To the extent there were any risks associated with the use of the product which is the subject matter of this action which Merck knew or should have known and which gave rise to a duty to warn, Merck at all times discharged such duty through appropriate and adequate warnings in accordance with federal and state law.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff has not sustained an ascertainable loss of property or money.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff has not suffered any actual injury or damages.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under the doctrine of economic loss.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

This case is more appropriately brought in a different venue as defined in 28 U.S.C. §1404(a).

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

This case is subject to dismissal and/or transfer to another venue pursuant to 28 U.S.C. §1406(a).

SQUIRE, SANDERS & DEMPSEY L.L.P.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

This case is subject to dismissal or stay on the grounds of *forum non conveniens*.

## FORTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims of fraud are not pleaded with the required particularity.

## FORTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff cannot recover for the claims asserted because Plaintiff has failed to comply with the conditions precedent necessary to bring this action and/or each particular cause of action asserted by Plaintiff.

## FORTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims for breach of warranty are barred because Plaintiff did not rely on such warranties and the claims are otherwise barred for lack of timely notice, lack of privity and/or because the alleged warranties were disclaimed.

## FORTY-THIRD AFFIRMATIVE DEFENSE

An asymptomatic plaintiff lacks standing because she has suffered no damages and no injury-in-fact.

## FORTY-FOURTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff asserts claims based on Merck's adherence to and compliance with applicable state laws, regulations and rules, such claims are preempted by federal law under the Final Rule, Requirements on Content and Format of Labeling for Human Prescription Drug and Biologic Products, FDA Docket No. 2000N-1269 (January 24, 2006).

## FORTY-FIFTH AFFIRMATIVE DEFENSE

The substantive law of Florida applies to Plaintiff's claims.

SQUIRE, SANDERS & DEMPSEY L.L.P.

_____

Inasmuch as the Complaint does not describe the alleged underlying claims with sufficient particularity to enable Merck to determine all of its legal, contractual and equitable rights, Merck reserves the right to amend and/or supplement the averments of its Answer to assert any and all pertinent liability defenses ascertained through further investigation and discovery.

Merck will rely on all defenses that may become available during discovery or trial.

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff's Complaint with prejudice and awarding Merck such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Merck demands a trial by jury as to all issues so triable.

DATED: *February 13*, 2008

Respectfully submitted,

Patricia E. Lowry
PLowry@ssd.com
Florida Bar No. 332569
Barbara Bolton Litten
BLitten@ssd.com
Florida Bar No. 0091642
Squire, Sanders & Dempsey L.L.P.
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Tel.: 561.650.7200
Fax: 561.655.1509

Attorneys for Defendant Merck & Co., Inc

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of February, 2008 a copy of the foregoing was served by first class mail, postage prepaid, on:

> Meghan M. Tans
> Timothy M. O'Brien
> Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
> 316 South Baylen Street, Suite 600
> P.O. Box 12308
> Pensacola, FL 32591
>
> Attorneys for Plaintiff

Barbara Bolton Litten

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

BETTY LANGSTON

      VS                                          CASE NO. 3:08cv57/RS-EMT

MERCK & CO., INC.

## INITIAL SCHEDULING ORDER

Rule 1 of the Federal Rules of Civil Procedure requires a "just, speedy, and inexpensive determination of every action."  To accomplish that purpose, and in accordance with Rule 16(b) of the Federal Rules of Civil Procedure, it is ORDERED as follows:

**(1)** **Discovery Period.**  The parties are directed to conduct discovery so that the due date of any discovery requested shall not be later than **June 18, 2008**.  The conduct of any discovery which would require a later due date shall be permitted only on order of the Court.  No extension of time will be granted except for good cause and upon showing of diligence during the initial discovery period [See N.D. Fla. Loc. R. 6.1].  The filing of motions SHALL NOT operate to toll or extend the discovery cut-off date set forth in this paragraph.

**(2)** **Rule 26 Requirements.**  This scheduling order is entered prior to the conference of parties and the filing of the joint report required under Rule 26, Federal Rules of Civil Procedure, so that discovery may proceed expeditiously and without unnecessary delay.  Modifications may be made to this order upon consideration of the parties' joint report.  The following will be required of all parties to this litigation:

**(a)** **Conference of Parties and Filing of Joint Report.**   Counsel of record and any unrepresented parties shall confer (personally, by phone, or electronically) within **30 days** from the date of this order, as required by Rule 26(f), and the joint report to the Court [see Form 35] shall be filed within **14 days** thereafter.  The plaintiff shall initiate arrangements for the conference and filing of the report, but the Court shall hold all parties equally responsible for insuring that the conference is held and the report filed as required.  If the parties are unable to agree, each party's position shall be set out in the filed joint report.  In addition to the matters set out in Rule 26(f), the following shall also be discussed at the conference and specifically addressed in the joint report:

        **(i)**   The matter of magistrate judge jurisdiction over the case.  In accordance with Rule 73.1(A) of the Local Rules, the parties are directed to confer regarding

their willingness to consent to magistrate judge jurisdiction, and the Joint Report should reflect this discussion.  However, the Joint Report should state <u>only</u> that the parties have conferred regarding this issue.  The parties may withhold consent if they so choose.  Under no circumstances should the parties indicate their respective positions on the matter of consent in the Joint Report.

If <u>all</u> parties, after conferring with one another, elect to consent to magistrate judge jurisdiction, the attached form of consent should be signed by <u>all</u> parties and filed in the clerk's office.  It shall be plaintiff's responsibility to forward the form to defendant(s), who, in turn, shall have the responsibility of filing the document.  The form should be filed <u>only</u> if <u>all</u> parties have consented and signed the form.  **If <u>any</u> party elects not to consent, the form should not be returned.**

(ii)    The nature and basis of all claims and defenses, and a good faith attempt to identify the principal factual and legal issues in dispute.

(iii)    The possibility for prompt settlement or resolution of the case, and whether mediation (or any other alternative dispute resolution process) might be helpful in settlement, either now or after certain limited discovery has taken place.

(iv)    Proposed timetables and cutoff dates for the joinder of other parties, amendments to the pleadings, and the filing of motions and responses, and in particular, whether this initial scheduling order should be revised or amended in any way.

(v)    The parties' respective discovery requirements in this case, and if the parties deem this initial scheduling order to be inadequate, they shall develop an alternate proposal which specifically addresses the timing and form of discovery, whether discovery should be conducted in phases or limited in any respect, and what, if any, changes should be made in the discovery procedures and time deadlines set out in this initial scheduling order, or in the applicable rules.

(vi)    Whether any party will likely request or produce information from electronic or computer-based media.  If so:

1.    whether disclosure or production will be limited to data reasonably available to the parties in the ordinary course of business [absent a showing of good cause, the Court will not require the production of back-up or historic legacy data, nor will it require the production of data that is not reasonably available in the ordinary course of business in reasonably usable form];

2.      if data beyond what is reasonably available to the parties in the ordinary course of business is to be sought, the anticipated scope, cost and time required for its disclosure or production, and who will bear the cost;

3.      the format and media agreed to by the parties for the production of any electronic or computer-based data, as well as agreed procedures for such production;

4.      whether reasonable measures have been taken to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise;

5.      procedures to deal with inadvertent production of privileged information; and

6.      other problems which the parties anticipate may arise in connection with electronic or computer-based discovery.

(vii)    A good faith estimate as to when the parties believe the case will be ready for trial (month and year).  This date will be set out in the joint report, and if it is not within **8 months** from the date of filing of this case, an explanation must be included.

(viii)    Any other matters which the parties deem appropriate with regard to specific aspects or the uniqueness of this case, and including any applicable subject within Rule 16(c).

(ix)    The parties are directed to inform the Court in their joint report if it appears that this case should be made subject to the Manual for Complex Litigation.

**(b)**    **Rule 26(a)(1) Disclosures.**  The disclosures required by Rule 26(a)(1) shall be provided (unless otherwise stipulated), without awaiting a discovery request, to all other parties within **14 days** from the date of the parties' conference required under Rule 26(f).

**(c)**    **Rule 26(a)(2) Disclosures.**  Rule 26(a)(2) disclosures of expert witnesses and their opinions shall be made by the plaintiff within **60 days** from the date of this scheduling order, and by the defendant or defendants within **30 days** thereafter.  Third parties or parties added or joined later shall disclose their experts under Rule 26(a)(2) within 60 days after appearance in this case, or within 30 days after the disclosure by the opposing party, whichever is the longer period.  Expert witnesses not timely disclosed as required by Rule 26(a)(2), or whose opinions have been significantly modified or changed after discovery has ended, will normally not be permitted to testify at trial.

      **(d)**     **Rule 26(a)(3) Disclosures.**  The Rule 26(a)(3) disclosures are not required at this time.  The Court will enter an order after the completion of discovery which will set a pretrial conference and will specify the parties' comprehensive trial disclosure and preparation requirements.

      **(3)**     **Additional Court Action or Scheduling Conference.**  The Court will promptly consider the parties' filed joint report, and will take one of the following courses of action within **14 days** thereafter:

      **(a)**     Enter a final scheduling order by modifying this initial scheduling order as the presiding judge deems appropriate in light of the parties' joint report, or by adopting the parties' report, or by confirming the requirements of this order.

      **(b)**     Set the matter for a Rule 16 scheduling conference, either for the attorneys' (and any unrepresented parties') personal attendance, or to be conducted by telephone.  A final scheduling order will be entered thereafter.

      **(c)**     If the Court takes no action within **14 days** from the filing of the joint report, this initial scheduling order will continue in full force and effect until some further order of this Court.

      **(d)**     If any party so requests by motion, a scheduling conference or preliminary pre-trial conference may be held to address any of the matters set out in Rule 16(a), (b), and (c), Federal Rules of Civil Procedure.

      **(4)**     **Interrogatories.**  The number of interrogatories shall be governed by Rule 33(a), Federal Rules of Civil Procedure.

      **(5)**     **Schedule of Pre-Trial Matters.**  In accordance with Rule 16(b), Federal Rules of Civil Procedure, the following schedule shall apply to this case, unless excluded by Local Rule 16.1, or unless any party shall file an objection or request for a different schedule within **44 days** from the date of this order, viz:

      **(a)**     Joinder of other parties and amendments of pleadings shall be accomplished by the service and filing of the appropriate motions or pleadings within the time required by the Federal Rules of Civil Procedure or the Local Rules of this Court, except as noted below.

      **(b)**     All motions and responses shall be served and filed within the time required by the Federal Rules of Civil Procedure or the Local Rules of this Court.

      **(c)**     Motions for summary judgment shall be filed as promptly as possible, but, unless otherwise permitted by court order, not later than **20 days** after the close of discovery.

(d)     Unless otherwise ordered by the Court, no motions to compel discovery may be filed after the close of discovery.

(e)     Motions filed may be disposed of without hearing [See N.D. Fla. Loc. R. 7.1].

(f)     If the rules and this order do not provide a time for the filing or service of motions or pleadings, then such motions or pleadings shall be served and filed within the period provided for the completion of discovery.

**(6)     Attorneys' Discovery Obligations.**  The Rules of Civil Procedure set out explicit time limits for responses to discovery requests.  If an attorney cannot respond on time, this fact should be communicated by the most expeditious means to opposing counsel; and if consent to an extension of time cannot be obtained, a motion requesting the same should be immediately filed and served.  In the meantime, no motion to compel a response shall be filed.   Stipulations extending the time for responses to discovery may be made only as authorized by Rule 29, Federal Rules of Civil Procedure, and Local Rule 6.1.

**(7)     Rule 37 Awards of Motion Expenses.**  The Court will ordinarily award counsel fees for time spent in filing (and arguing) a motion to compel if such a motion is necessary to make the recalcitrant party respond, or for time spent in opposing (and arguing) such a motion that is found to be unnecessary or without basis.   Certification of all discovery requests, responses, and objections is required under Rule 26(g), and violations thereof will be subject to sanctions.

**(8)     Resolution of Discovery Controversies.**  Counsel should attempt to resolve discovery controversies without the Court's intervention.  The Court will entertain a motion with respect to matters which remain in controversy only if, after consultation and sincere attempts to resolve differences, counsel are unable to reach an accord.  Any motion filed shall include certification that such attempts have been made, in accordance with Rule 7(B) and Rule 37, Federal Rules of Civil Procedure, and shall be in the form required by Local Rule 26.2(D). Counsel's attention is also directed to the supplementation requirements of Rule 26(e) and their obligations under Rule 26(g), as well as counsel's potential liability for excessive costs under Title 28, United States Code, Section 1927.

**(9)     Attorneys' Fees Records.**  In any proceeding in which a party is seeking attorney's fees from the opposing party to be awarded by the Court pursuant to a statute, contract, or law, the party seeking such an award of attorney's fees shall:

(a)      Maintain a complete, separate, and accurate record of time (to the nearest 1/10 of an hour) devoted to the particular action, recorded contemporaneously with the time expended, for each attorney and each specific activity (i.e. not just "research" or "conference") involved in the action, and

(b)      File a summary of such time record with the Clerk of the Court by the **15th** **day** of each month during the pendency of the action, for work done during the preceding month.  If the attorney determines that the attorney/client privilege requires these records be filed under seal, the attorney must, at the time of such filing, place the records in a sealed envelope no larger than 8-1/2 by 11 inches.  The attorney must also attach to the front of these sealed records a summary, for filing, of the time records and serve a copy thereof on opposing parties or their counsel, which summary shall state the total of the hours represented by the sealed filing, i.e.,

"TOTAL ATTORNEY HOURS THIS FILING"                    _____

"TOTAL NON-ATTORNEY HOURS THIS FILING"            _____

Attorney time records will not be placed in the general case action file, but will be maintained in a separate folder in the Clerk's Office.  Upon termination of this case or the determination of attorney's fees, whichever occurs later, all sealed time records in this civil action will be destroyed.

(c)      If claim will be made for services performed by any person not a member of the bar, a separate time record shall be maintained for each such individual and filed as specified above, together with the hourly rate at which such person is actually reimbursed.

(d)      Time records for past work performed to date in this case shall be filed within **30 days** from receipt of this order, or by the required filing date of the current month's time records, whichever is later.

The purpose of this requirement is to enable the Court to adequately perform its function in awarding attorney's fees.  Failure to comply with these requirements will result in attorney's fees being disallowed for the required reporting period.  A motion for an award of attorney's fees and related non-taxable expenses should be made in accordance with Rule 54(d), Federal Rules of Civil Procedure, and must be filed and served within **30 days** after entry of judgment.

(10)    **Summary Judgment Motions.**  Any motion for summary judgment filed pursuant to Rule 56 (or Rule 12(b)(6) which requires reference to matters outside the pleading), Federal Rules of Civil Procedure, shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement constitutes grounds for denial of the motion.

The statement shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied-upon material fact, by page, paragraph, number, or other detail sufficient to permit the Court to readily locate and check the source.

The party opposing a motion for summary judgment shall, in addition to other papers or matters permitted by the rules, file and serve a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, in the format set forth above.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party [See N.D. Fla. Loc. R. 56.1(A)].

Motions for summary judgment will be taken under advisement by the court 21 calendar days after the motion is filed or 7 calendar days after the responsive memorandum is required to be filed under Local Rule 7.1(C)(1), whichever is later, unless the court specifically sets the motion for hearing or sets a different advisement date.  Parties are required to file and serve affidavits and any other documents or materials authorized to be filed under the Federal Rules of Civil Procedure prior to the advisement date.  Only those documents and evidentiary materials in the record prior to the advisement date will be considered in ruling on the motion.

(11)    **Non-Filing of Rule 26 Disclosures and Discovery Materials.**  In accordance with Federal Rule of Civil Procedure 5(d), the parties shall serve but **shall not file with the clerk** copies of disclosures under Federal Rules of Civil Procedure 26(a)(1) and 26(a)(2) or discovery materials (including notices of deposition, deposition transcripts, interrogatories, responses to interrogatories, production requests, responses to production requests, admissions requests, or responses to admissions requests), unless and until needed for consideration of pending motions by the court.  The parties need not serve and **shall not file with the clerk** separate notices of serving interrogatories or interrogatory responses, notices of serving production requests or responses, or notices of serving admissions requests or responses.

**(12)** **Electronic Filing.**  Each party represented by an attorney is **required** to file documents electronically, not in paper form, with limited exceptions.  Compliance with this requirement is mandatory.  Paper filings are a burden on the clerk of the court, delay the transmission of the documents to the judge, and waste the judge's time.  The clerk is directed to report to the judge for appropriate action any paper filings in this matter that occur more than 14 days after the date of this order.

**(13)** **Disclosure Statement.**  Each nongovernmental corporate party must file a statement that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation.  The deadline for filing the statement is set forth in Fed. R. Civ. P. 7.1, and, if not filed sooner, the statement must in any event be filed within **14 days** of the date of this order.  A supplemental statement must be filed upon any change in the information that the statement requires.

**(14)** **Amendments.**  This order may be amended by the Court on its own motion or upon motion of any party.

**DONE and ORDERED this 19th day of February, 2008.**

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**

*FLN Form 85 (rev. 8/98) Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

BETTY LANGSTON

VS                                                      CASE NO. 3:08cv57/RS-EMT

MERCK & CO., INC.

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE
## TO EXERCISE JURISDICTION

In accordance with the provisions of 28 U.S.C. §636(c), and Fed.R.Civ.P. 73, you are notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge. If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any magistrate judge or to the district judge to whom the case has been assigned.

An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.

### CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.

Party Represented                    Signatures                         Date

_____    _____    _____

_____    _____    _____

_____    _____    _____

_____    _____    _____

### ORDER OF REFERENCE

IT IS ORDERED that this case be referred to _____, United States Magistrate Judge, to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. §636(c), Fed.R.Civ.P. 73, and the foregoing consent of the parties.

_____        _____
Date                                     United States District Judge

NOTE: RETURN THIS FORM TO THE CLERK OF THE COURT <u>ONLY IF</u> ALL PARTIES HAVE CONSENTED <u>ON THIS FORM</u> TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.

## NOTICE OF RIGHT TO CONSENT TO DISPOSITION OF
## CIVIL CASE BY A UNITED STATES MAGISTRATE JUDGE

Under 28 U.S.C. § 636(c)(1), full-time magistrate judges are authorized to exercise civil jurisdiction, including trial of the case and entry of final judgment, upon consent of the parties. Due to the district courts' heavy trial schedules, such consent to magistrate jurisdiction often results in more expeditious resolution of cases. The parties are, of course, entirely free to withhold such consent without any adverse consequences.

In all civil cases, other than prisoner litigation and social security appeals, the parties shall be required pursuant to the Initial Scheduling Order to confer regarding the matter of magistrate judge jurisdiction. However, the Joint Report should state <u>only</u> that the parties have conferred regarding this issue. **Under no circumstances should the parties indicate their respective positions on the matter of consent in the Joint Report.**

Should <u>all</u> parties, after conferring with one another, elect to consent to magistrate judge jurisdiction, the attached form of consent should be signed by <u>all</u> parties and returned to the court. It shall be plaintiff's responsibility to forward the form to defendant(s), who, in turn, shall have the responsibility of filing the document with the court through the clerk's office. The form should be returned to the court <u>only</u> if all parties have consented and signed the form. **Should <u>any</u> party elect not to consent, the form should not be returned.**

In prisoner litigation and social security appeals, and any other case in which an Initial Scheduling Order is not entered, the clerk shall, after the first responsive pleading is filed, send a consent form to the plaintiff. If the plaintiff elects to consent, plaintiff shall sign the form and promptly send it to defendant(s). If defendant(s) also consents and signs the form, defendant(s) shall promptly return the form to the court. **Should <u>any</u> party elect not to consent, the form should not be returned.**

A party's decision to consent, or not to consent, to the disposition of the case before a United States Magistrate Judge is entirely voluntary, and no judge of this court will be informed of a party's decision to withhold consent. By returning the consent form <u>only</u> in cases where all parties consent, the court will not be aware of which party withheld consent. Where the consent form is not returned to the court during the early stages of the case, either the district court judge or magistrate judge may again advise the parties of the availability of the magistrate judge, but in doing so, shall also advise the parties that they are free to withhold consent without adverse consequences.

Please note that in the event of consent, the parties may appeal a final judgment from the magistrate directly to the court of appeals in the same manner as an appeal from any other judgment of the district court.

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

BETTY LANGSTON,

        Plaintiff,

vs.                                 CASE NO. 3:08cv57/RS-EMT

MERCK & CO., INC.,

        Defendant.

_____/

**<u>NOTICE OF PRELIMINARY CASE MANAGEMENT CONFERENCE</u>**

A case management conference has been scheduled in this case for **Monday, March 10, 2008, at 10:00 a.m. (CST), in the Jury Deliberation Room, Second Floor, United States Courthouse, 30 West Government Street, Panama City, Florida**. The attorneys for the parties and any unrepresented parties are required to appear prepared to discuss the following matters and with authority to enter into stipulations and to make admissions:

(1)    Jurisdiction.

(2)    The factual basis of all claims and defenses.

(3)    Narrowing the legal issues to those genuinely in dispute. Are there positive and dispositive issues appropriate for resolution by motion or by agreement?

(4)    Motions. What motions are anticipated?

(5)    Discovery. What discovery does each party anticipate? Can discovery be limited in any manner? Potential problems with discovery. The possibility of phase discovery.

(6)     Relief.  What relief do the parties seek?

(7)     What is the amount of damages?  Explain how damages are computed.

(8)     Discouraging wasteful pretrial activity.

(9)     Expediting disposition of the case.  Facilitating settlement.

(10)    Trial.  Jury or by the court?  Bifurcation?  The anticipated length of trial.
        Possibility of reducing the length of trial by stipulation, use of summaries or
        statements, or other expedited means of presenting evidence.

(11)    Related cases.  Are there any related cases pending in this court or another
        court?

(12)    Suggestions for the fair, speedy, and inexpensive resolution of this case.

(13)    Standard scheduling orders.


***** **In the event it is necessary for counsel for any party to attend the conference by telephone, <u>counsel</u> is responsible for advising the deputy clerk <u>not later than 48 hours prior to the conference</u> at (850) 769-4556 and providing a telephone number where they can be reached for the conference.  The court will initiate the call.**


ORDERED on February 21, 2008.


/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| BETTY LANGSTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:08cv57/RS-EMT |
| | ) | |
| vs. | ) | |
| | ) | |
| MERCK & CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

### DEFENDANT MERCK & CO., INC.'S
### UNOPPOSED MOTION TO STAY PROCEEDINGS
### PENDING TRANSFER TO MULTIDISTRICT LITIGATION

### (And Local Rule 7.1(B) Certificate)

Defendant Merck & Co., Inc. ("Merck"), by counsel, moves this Court to stay all

proceedings in this action pending its transfer to *In re Fosamax Prods. Liab. Litig.*, MDL No.

1789, the multidistrict litigation ("MDL") proceeding that has been established in the Southern

District of New York to coordinate federal product liability actions involving FOSAMAX®

("Fosamax**"**).  Counsel for Plaintiff has authorized the undersigned counsel to state that this

motion is not opposed.

### BACKGROUND

A.      **The Fosamax MDL Proceedings.**

On August 16, 2006, the Judicial Panel on Multidistrict Litigation (the "MDL Panel" or

"Panel") issued a transfer order establishing MDL Proceeding No. 1789, titled *In re Fosamax*

*Products Liability Litigation*, 444 F. Supp. 2d 1347 (J.P.M.L. 2006).  The transfer order directed

that eighteen actions be transferred for coordinated pretrial proceedings in the U.S. District Court

for the Southern District of New York before the Honorable John F. Keenan. *Id*. at 1349. In the

Transfer Order, the Panel held:

> On the basis of the papers filed and hearing session held, the Panel finds that the eighteen actions listed on Schedule A involve common questions of fact, and that their centralization under Section 1407 in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. These eighteen actions are brought by persons allegedly injured by ingestion of Merck's Fosamax, a prescription medication used in the treatment of osteoporosis. Specifically, these actions present complex common factual questions concerning, among other things, 1) the development, testing, manufacturing and marketing of Fosamax, and 2) Merck's knowledge concerning the drug's alleged adverse effects, in particular, osteonecrosis of the jaw. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary.

*Id*. The MDL Panel also held that "fourteen related actions" pending in multiple federal districts

"will be treated as potential tag-along actions." *Id*. at n. 1.

There is an established process for quickly and efficiently effecting the transfer to Judge

Keenan's court of related Fosamax product liability actions. Merck's counsel, in a written

submission known as a "tag-along letter," notifies the Panel promptly of newly filed related

actions and developments in actions still under Panel consideration, and the Panel issues a

conditional transfer order providing for the transfer of that action to Judge Keenan's court. As of

this date, the MDL Panel has issued 49 Conditional Transfer Orders requiring the transfer of at

least an additional 131 actions to MDL 1789, where a total of 385 cases are now pending,

including both the transferred cases and cases filed directly in the transferee court.

**B.     The Instant Action.**

In February 2008, Plaintiff Betty Langston commenced this action entitled *Langston v.*

*Merck & Co., Inc.*, Case No. 2007 CA 005917 S, against Merck in the Circuit Court of the First

2

Judicial Circuit, State of Florida, in and for Okaloosa County.  Merck was served with the Complaint on February 5, 2008.  On or about February 14, 2008, Merck removed this action to this Court, based on diversity jurisdiction under 28 U.S.C. § 1332.

This action involves the same factual inquiries that the Panel noted were present in the Fosamax product liability actions generally, thereby warranting coordinated pre-trial proceedings in the Southern District of New York.  Plaintiff alleges that, as a result of ingesting Fosamax, she "suffered and may continue to suffer severe and permanent personal injuries to the jaw bone, including osteonecrosis of the jaw and other diagnoses of irreversible damage to the jaw," and contends that Merck did not warn her of the alleged risks of taking Fosamax.  (Complaint ¶¶ 12, 30-31, 34).

Pursuant to Rule 7.5 of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation, Merck provided notice to the MDL Panel of the pendency of this "tag-along" action in a letter dated February 20, 2008.  Merck expects that the MDL Panel will shortly issue an Order for the transfer of this case to the Fosamax MDL Proceedings.

## ARGUMENT

The Court should exercise its discretion to stay all further proceedings in this action pending its likely transfer to MDL-1789.  The authority of a federal court to stay proceedings is well-established.  *See Landis v. North American Co.,* 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  Courts analyze three factors when determining whether to issue a stay of proceedings pending the MDL Panel's decision on transfer, namely: (1) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact coordinated; (2)

3

hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party. *Buie v. Blue Cross & Blue Shield of Kan. City, Inc.*, No. 05-0534, 2005 U.S. Dist. LEXIS 35783, at *4 (W.D. Mo. Sept. 13, 2005).

Granting a stay of proceedings here will promote judicial economy. The purpose of multidistrict litigation is to coordinate the pretrial management of actions sharing common facts in a just and efficient manner. *See* 28 U.S.C. 1407(a). The Court is best served not expending resources "familiarizing itself with the intricacies of an action that will be coordinated for pretrial management before a transferee judge." *Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). Granting a stay of this action pending its transfer to MDL-1789 will conserve the resources of this Court and prevent duplicative discovery and pretrial management efforts. *See Board of Trustees of Teachers' Retirement System v. Worldcom, Inc.,* 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002) ("Having one court rather than three decide complex jurisdictional issues obviously saves judicial resources."). The MDL Panel has already coordinated Fosamax product liability actions before Judge Keenan in the Southern District of New York, and it will promote judicial economy to briefly stay this case while the MDL Panel determines whether it should be transferred.

A stay will avoid prejudice to Merck. *See American Seafood, Inc. v. Magnolia Processing*, Nos. 92- 1030, 92-1086, 1992 WL 102762, at *2 (E. D. Pa. May 7, 1992) ("The duplicative motion practice and discovery proceedings demonstrate that . . . prejudice to the defendants weigh heavily in favor of a stay."). Thus far, there are at least 385 Fosamax actions being coordinated in MDL-1789. If individual cases proceeded in the short window between the time cases were filed in or removed to individual federal district courts and they were transferred to Judge Keenan, Merck would face substantial hardship. Merck should not be forced to engage

4

in unnecessary and duplicative discovery and motion practice. *See Wilbanks v. Merck & Co., Inc.*, No. 05-1241-T/AN, 2005 WL 2234071, at *1 (W.D. Tenn. Sept 13, 2005) (granting a stay holding that "in the absence of a stay, the risk to Merck of duplicative motions and discovery is significant").

In contrast, no party would suffer prejudice if the stay were granted. Any delay in the preliminary proceedings in this case would be both brief and offset by the benefits of coordinated discovery and motion practice after all of the overlapping lawsuits are transferred to a single court. *See, e.g., Rivers*, 980 F. Supp. at 1362 (discounting any prejudice to the non-moving party in the time between issuing the stay and the MDL Panel's consideration of the motion). Whatever limited discovery could take place in the next several weeks will be wholly subsumed and superseded by the discovery that will take place in the MDL, and no party will be prejudiced by a limited delay.

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that this Court grant this unopposed motion to stay all proceedings in this case pending transfer to the MDL proceeding that has been established in the Southern District of New York.

## LOCAL RULE 7.1(B) CERTIFICATE

Pursuant to Rule 7.1(B). of the Local Rules of the United States District Court for the Northern District of Florida, counsel for Merck telephoned counsel for Plaintiff and was informed that Plaintiff's counsel does not oppose this motion.

DATED:   March 3, 2008

Respectfully submitted,


*/s/ Barbara Bolton Litten*
Patricia E. Lowry
PLowry@ssd.com
Florida Bar No. 332569
Barbara Bolton Litten
BLitten@ssd.com
Florida Bar No. 0091642
Squire, Sanders & Dempsey L.L.P.
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Tel.:    561.650.7200
Fax:    561.655.1509

Attorneys for Defendant Merck & Co., Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of March, 2008 a copy of the foregoing was

electronically filed with the Clerk of the Court using the CM/ECF system, which will send a

notice to Plaintiff's counsel:


      Meghan M. Tans
      Timothy M. O'Brien
      Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
      *Attorneys for Plaintiff*
      316 South Baylen Street, Suite 600
      P.O. Box 12308
      Pensacola, FL 32591

                  */s/ Barbara Bolton Litten*
                  Barbara Bolton Litten

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| BETTY LANGSTON, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:08cv57/RS-EMT |
| | ) |
| vs. | ) |
| | ) |
| MERCK & CO., INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| ──────────────────────── | ) |

**DEFENDANT MERCK & CO., INC.'S
RULE 7.1 DISCLOSURE STATEMENT**

Defendant Merck & Co., Inc. ("Merck"), pursuant to Rule 7.1(a) of the Federal

Rules of Civil Procedure and to enable judges and magistrate judges of the Court to

evaluate possible disqualification or recusal, states that it has no parent companies and is

not aware of any beneficial owner of more than ten percent of its Common Stock.

DATED:   March 4, 2008

Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry
PLowry@ssd.com
Florida Bar No. 332569
Barbara Bolton Litten
BLitten@ssd.com
Florida Bar No. 0091642
Squire, Sanders & Dempsey L.L.P.
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Tel.:   561.650.7200
Fax:   561.655.1509

Attorneys for Defendant Merck & Co., Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of March, 2008 a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice to Plaintiff's counsel:

Meghan M. Tans
Timothy M. O'Brien
Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
*Attorneys for Plaintiff*
316 South Baylen Street, Suite 600
P.O. Box 12308
Pensacola, FL 32591

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

WESTPALMBEACH/523272.1

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

BETTY LANGSTON,

       Plaintiff,

vs.                                  CASE NO. 3:08cv57/RS-EMT

MERCK & CO., INC.,

       Defendant.

_____/

## <u>ORDER</u>

Before me is Defendant Merck & Co., Inc.'s Unopposed Motion to Stay

Proceedings (Doc. 6).

**IT IS ORDERED:**

1.     All proceedings in this case are stayed pending further order.

2.     The parties shall file status reports no less frequently than every thirty

days about the pending transfer of this case to the Multidistrict Litigation

Proceeding in the U. S. District Court, Southern District of New York.

ORDERED on March 4, 2008.

/S/ Richard Smoak_____
**RICHARD SMOAK
UNITED STATES DISTRICT JUDGE**

# UNITED STATES JUDICIAL PANEL

## on

# MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:        [202] 502-2888
http://www.jpml.uscourts.gov

March 24, 2008

J. Michael McMahon, Clerk
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: MDL No. 1789 -- IN RE: Fosamax Products Liability Litigation

(See Attached CTO-50)

Dear Mr. McMahon:

I am enclosing a certified copy and one additional copy of a conditional transfer order filed by the Panel in the above-captioned matter on March 6, 2008. As stipulated in Rule 7.4(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), transmittal of the order has been stayed 15 days to give any party an opportunity to oppose the transfer. The 15-day period has now elapsed, no opposition was received, and the order is directed to you for filing.

The Panel's governing statute, 28 U.S.C. §1407, requires that the transferee clerk "...transmit a certified copy of the Panel's order to transfer to the clerk of the district court from which the action is being transferred."

A list of involved counsel is attached.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By Dana L. Stewart

Deputy Clerk

Attachment

cc:  Transferee Judge:     Judge John F. Keenan
     Transferor Judges:    Judge M. Casey Rodgers; Judge Richard Smoak, Jr.
     Transferor Clerk:     William M. McCool

JPML Form 36

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**MAR - 6 2008**

FILED
CLERK'S OFFICE

## UNITED STATES JUDICIAL PANEL
### on
## MULTIDISTRICT LITIGATION

### IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION

| | | |
|---|---|---|
| Janie H. Clary v. Merck & Co., Inc., | ) | |
|    N.D. Florida, C.A. No. 3:08-48 | ) | MDL No. 1789 |
| Betty Langston v. Merck & Co., Inc., | ) | |
|    N.D. Florida, C.A. No. 3:08-57 | ) | |

### CONDITIONAL TRANSFER ORDER (CTO-50)

On August 16, 2006, the Panel transferred four civil actions to the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 444 F.Supp.2d 1347 (J.P.M.L. 2006). Since that time, 120 additional actions have been transferred to the Southern District of New York. With the consent of that court, all such actions have been assigned to the Honorable John F. Keenan.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of New York and assigned to Judge Keenan.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of August 16, 2006, and, with the consent of that court, assigned to the Honorable John F. Keenan.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of New York. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

**Inasmuch as no objection is pending at this time, the stay is lifted.**

MAR 2 4 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

2008 MAR 27  AM 11: 52

FILED

**IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION**                    MDL No. 1789

### INVOLVED COUNSEL LIST (CTO-50)

M. King Hill, III
VENABLE LLP
210 Allegheny Avenue
Towson, MD 21204

Katharine R. Latimer
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W.
9th Floor
Washington, DC 20005

Barbara B. Litten
SQUIRE SANDERS & DEMPSEY LLP
777 South Flagler Drive
1900 Phillips Point West
West Palm Beach, FL 33401-6198

Timothy M. O'Brien
LEVIN PAPANTONIO THOMAS ET AL
316 S. Baylen Street
Suite 600
P.O. Box 12308
Pensacola, FL 32591

Christopher A. Seeger
SEEGER WEISS
One William Street
10th Floor
New York, NY 10004-2502

Terry O. Tottenham
FULBRIGHT & JAWORSKI LLP
600 Congress Avenue
Suite 2400
Austin, TX 78701-2011

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BETTY LANGSTON,                          )
                                         )
                    Plaintiff,           )    Case No. 3:08cv57/RS-EMT
                                         )
        vs.                              )
                                         )
MERCK & CO., INC.,                       )
                                         )
                    Defendant.           )
                                         )
_____  )

**DEFENDANT MERCK & CO., INC.'S**
**NOTICE OF STATUS OF TRANSFER TO MDL PROCEEDING**

Pursuant to the Court's March 4, 2008 Order granting Merck's unopposed motion

to stay, Defendant Merck & Co., Inc. ("Merck") informs the Court that on March 6,

2008, the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel")

issued its fiftieth Conditional Transfer Order ("CTO-50") transferring two Fosamax cases

to the Southern District of New York in order to allow for coordinated pretrial

proceedings before The Honorable John F. Keenan.  This civil action was one of the

actions specifically included in CTO-50.

Plaintiff did not object to the transfer of this case to the MDL proceeding within

the 15-day period provided for by the MDL rules and the stay was lifted on March 24,

2008.  The March 24, 2008, letter from the Clerk of the MDL Panel transmitting CTO-50

to the Clerk of the Southern District of New York was filed in this action on March 27,

2008.  See D.E. 10.  The Docket Text for Docket Entry 10 indicates the Clerk is

"awaiting request of file from the transferee court."

The Southern District of New York court docket indicates that this action has been assigned Case No. 1:08-cv-03108-JFK and that the Case Assignment Clerk mailed a letter to this Court on March 26, 2008, requesting the Northern District of Florida file.

Accordingly, this action will become part of MDL-1789 and will be transferred to Judge Keenan's court for coordinated pretrial proceedings.

WHEREFORE, for the reasons set forth above as well as those described in Merck's unopposed motion to stay, pending the final transfer of this case to the Southern District of New York, a further stay of proceedings is necessary and appropriate to achieve the judicial economies that underlie the establishment of MDL-1789.

Date:  April 4, 2008.

Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry
PLowry@ssd.com
Florida Bar No. 332569
Barbara Bolton Litten
BLitten@ssd.com
Florida Bar No. 0091642
Squire, Sanders & Dempsey L.L.P.
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Tel.:    561.650.7200
Fax:    561.655.1509

Attorneys for Defendant Merck & Co., Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of April, 2008 a copy of the foregoing was

electronically filed with the Clerk of the Court using the CM/ECF system, which will

send a notice to Plaintiff's counsel:

      Meghan M. Tans
      Timothy M. O'Brien
      Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
      *Attorneys for Plaintiff*
      316 South Baylen Street, Suite 600
      P.O. Box 12308
      Pensacola, FL 32591

                        */s/ Barbara Bolton Litten*
                        Barbara Bolton Litten

WESTPALMBEACH/524461.1

UNITED STATES DISTRICT COURT
Southern District of New York
Office of the Clerk
500 Pearl Street
New York, N.Y. 10007
(212)805-0136

J. Michael McMahon
Clerk
N.D. OF CALIFORNIA
Florida

Date:    03/26/2008

In Re:    FOSAMAX

MDL    06 MDL 1789

Your Docket #

3:08-57 - RS/EMT

S.D. OF N.Y.

08 CV 3111

Dear Sir:

Enclosed is a certified copy of the order of the Judicial Panel on Multidistrict Litigation, transferring the above entitled action presently pending in your court, to the Southern District of New York and assigned to Judge KEENAN for coordinated or consolidated pretrial processing pursuant to 28 USC 1407.

Please return the copy of this letter when transmitting YOUR FILE and a CERTIFIED COPY OF THE DOCKET SHEET.

Sincerely,
J.Michael McMahon

By: Phyllis Adamik
MDL Unit
(212) 805-0646

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

08 APR 11  PM 3: 28

jmel

FILED

A CERTIFIED TRUE COPY

MAR 2 4 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**08 CV 03111**

MAR - 6 2008

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

U.S. DISTRICT COURT
FILED
MAR 26 2008
S.D. OF N.Y.

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION | |
| Janie H. Clary v. Merck & Co., Inc.,<br>N.D. Florida, C.A. No. 3:08-48 | ) |
| Betty Langston v. Merck & Co., Inc.,<br>N.D. Florida, C.A. No. 3:08-57 | ) |

MDL No. 1789

### CONDITIONAL TRANSFER ORDER (CTO-50)

On August 16, 2006, the Panel transferred four civil actions to the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 444 F.Supp.2d 1347 (J.P.M.L. 2006). Since that time, 120 additional actions have been transferred to the Southern District of New York. With the consent of that court, all such actions have been assigned to the Honorable John F. Keenan.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of New York and assigned to Judge Keenan.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation,</u> 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of August 16, 2006, and, with the consent of that court, assigned to the Honorable John F. Keenan.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of New York. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

Inasmuch as no objection is
pending at this time, the
stay is lifted.

MAR 2 4 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

A Clerk of the Panel
J. Motley
Jeffery N. Lüthi
Clerk of the Panel

BY

DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

BETTY LANGSTON

     VS                                CASE NO.  3:08CV57-RS-EMT
                                        MDL CASE NO.   06 MDL 1789
                                        SDNY CASE NO. 08CV3111

MERCK & CO INC

## NOTICE OF TRANSFER OUT OF DISTRICT

**To:**   Clerk, United States District Court
        Southern District of New York
        Office of the Clerk
        500 Pearl Street
        New York, NY 10007

       Pursuant to the Order of the MDL Panel transferring the above-styled civil action to your court and notification by your court, please find attached a certified copy of the docket sheet and the original file in said civil action.

       Please acknowledge receipt of the file and docket sheet on the enclosed copy of this notice of transmittal.

                               WILLIAM M. McCOOL, CLERK OF COURT

 April 17, 2008
DATE:                        s/ Jeremy Wright
                        Deputy Clerk: Jeremy Wright

Acknowledgment:
Date received in your district:
Your Case No.: